**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DIB
F. #2024R00288

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 8, 2026

<u>By ECF and E-Mail</u>

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re:  United States v. Marves Fairley
        <u>Criminal Docket Nos. 25-353 (LDH) and 26-110 (LDH)</u>

Dear Judge DeArcy Hall:

    On May 28, 2026, the defendant Marves Fairley pleaded guilty before the Honorable Joseph A. Marutollo, United States Magistrate Judge, to all counts of the indictments in the above-captioned cases. This Court has scheduled the defendant's sentencing for February 24, 2027.

    By this letter, the government respectfully requests that the Court accept the defendant's guilty plea in connection with the above-captioned cases. The government encloses as Exhibits A and B, respectively: (1) a transcript of the May 28 plea hearing, during which Judge Marutollo recommended that this Court accept the defendant's guilty plea (see Ex. A at 56:7-10); and (2) a proposed Order.

          Respectfully submitted,

          JOSEPH NOCELLA, JR.
          United States Attorney

    By: *David J. Berman*
       Kaitlin T. Farrell
       Benjamin Weintraub
       David I. Berman
       Assistant United States Attorney
       (718) 254-6167

cc:  Clerk of Court (LDH) (by E-Mail and ECF)
    Counsel of Record (by E-Mail and ECF)

# Exhibit A

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

------------------------------X Docket#'s
UNITED STATES OF AMERICA,      : 25-cr-00323-LDH-JAM-2
                               : 26-cr-00110-LDH-JAM-1
                               :
    - versus -                 : U.S. Courthouse
                               : Brooklyn, New York
MARVES FAIRLEY,                :
                               : May 28, 2026
                Defendant      : 12:32 p.m.
------------------------------X
```

          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
        BEFORE THE HONORABLE JOSEPH A. MARUTOLLO
              UNITED STATES MAGISTRATE JUDGE


**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government**:          **Joseph Nocella, Esq.**
                                 Interim United States Attorney

                          BY:    **David I. Berman, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York 11201


**For the Defendant**:           **Eric W. Siegle, Esq.**
                                 Siegle & Sims PC
                                 217 Broadway, Suite 611
                                 New York, NY 10007


**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

THE COURT: All right. Please be seated.

THE CLERK: Criminal Cause for a Pleading, docket number 25-cr-323 and docket number 26-cr-110, *USA v. Marves Fairley*.

Will the parties please state their appearances for the record starting with the government?

MR. BERMAN: Good afternoon, your Honor. David Berman for the government.

MR. SIEGLE: And on behalf of Mr. Fairley, good afternoon, your Honor, Eric Siegle.

THE COURT: All right. Good afternoon. And counsel, you can be seated.

So Mr. Fairley, your attorney advises me that you wish to enter a guilty plea today in the cases docketed 25-cr-323 and 26-cr-110 in the Eastern District of New York.

These pleas are serious decisions. I have to make sure that you understand your rights and the consequences of your plea. I'm going to explain certain things and I need to ask you questions and I want your answers to be under oath, so I'll ask my deputy to swear the defendant.

THE CLERK: Please stand and raise your right hand.

MARVES FAIRLEY,

Proceedings

called as a witness, having been first duly sworn, was examined and testified as follows:

THE CLERK:  Thank you.  You may be seated.

THE COURT:  And just for the parties' awareness, this proceeding is being transcribed on our FTR machine and we have a member of the court staff here as well assisting with that process.  I would just ask the parties to request a copy of the transcript and split the cost in terms of paying for the transcript.  Okay?

MR. SIEGLE:  Yes, sir.

THE COURT:  Okay.  And as an initial matter, this hearing addresses the actions in, as I said before, 26-cr-110 and 25-cr-323.

In 26-cr-110, the Eastern District of New York, the defendant had agreed to transfer the Eastern District of Pennsylvania case, which was 26-cr-23, to the U.S. District Court for the Eastern District of New York.  And just noting that's accurate on the defense side that as of April 26, 2026 there was that consent to transfer the case for plea and sentencing under Federal Rule of Criminal Procedure 20, that's docketed at docket number 245 in the Eastern District of Pennsylvania case and at docket number 1 in the 26-cr-110 case?

MR. SIEGLE:  That's correct, your Honor.

THE COURT:  Okay.

Proceedings

MR. SIEGLE: Your Honor, is it okay to stay seated to be near the mic or do you want us to stand?

THE COURT: Yes, counsel for both sides can stay seated throughout.

MR. SIEGLE: Thank you, sir.

THE COURT: And just to be clear too out of an abundance of caution, pursuant to Rule 20 with respect to the Eastern District of Pennsylvania case, let me ask counsel one, the defendant has stated in writing a wish to plead guilty and to waive trial in the district where the indictment, information, or complaint is pending; consents in writing to the Court's disposing of the case in the transferee district; and files a statement in the transferee district; and the United States Attorneys in both districts approve of that transfer in writing. Is that right? Let me hear from defense counsel and then the government.

MR. SIEGLE: That is correct, your Honor.

MR. BERMAN: Correct, your Honor.

THE COURT: Okay. So for the sake of clarity in the transcript, I'll refer to the Eastern District of Pennsylvania indictment as 26-cr-110 during today's proceeding. I'll refer to the EDNY indictment as 25-cr-323. Okay?

MR. SIEGLE: Understood.

MR. BERMAN: Thank you, your Honor.

THE COURT: And I got all those docket numbers correct?

MR. SIEGLE: That is correct.

MR. BERMAN: Correct, your Honor.

THE COURT: Okay. So Mr. Fairley, you understand, and you can be seated throughout as well, sir, you understand that having been sworn your answers to my questions will be subject to the penalties of perjury or of making false statements if you do not answer truthfully? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you could just pull the mic close to you?

That means that if you answer falsely to any of my questions, the government may prosecute you for perjury or making a false statement and may use any of your false statements today during that prosecution. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And let me just again confirm with counsel that there's an agreement to proceed with the change of pleas with both 25-cr-323 and 26-cr-110 in today's single proceeding.

MR. BERMAN: Yes, your Honor, a consolidated

proceeding.

MR. SIEGLE: That's correct, your Honor.

THE COURT: Now Mr. Fairley, again, if there was going to be a prosecution for perjury or making a false statement, the government could use any statements you make under oath here today against you. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If I say anything that you don't understand or if you need me to repeat anything, please ask. It's extremely important that you understand everything that goes on in this proceeding. Is that clear?

THE DEFENDANT: Yes, your Honor.

THE COURT: And again, if you need time to speak with your attorney, let me know and I'll give you that time. Okay?

THE DEFENDANT: Yes.

THE COURT: So the first issue I want to address is me presiding over your plea today. Both of these cases are assigned to the district judge, Judge DeArcy Hall. I'm a magistrate judge also assigned to these cases. You have the right to have Judge DeArcy Hall listen to your guilty plea. If you choose to do that, there's no prejudice to you.

Proceedings

Alternatively, if you choose, you may waive or give up that right to have Judge DeArcy Hall listen to your plea. Instead, I will listen to your plea. A transcript will be made by the court reporter and then Judge DeArcy Hall will review the transcript in connection with your sentence. And here again it's being done through an FTR machine that's recording today's conference. So there will be a transcript made of today's proceeding. Do you understand all that, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: I have before me a Consent to Have a Plea Taken before the Magistrate Judge. I'm going to summarize what the document says. But first, let me confirm, Mr. Fairley, is this your signature?

THE DEFENDANT: Yes, your Honor.

THE COURT: And counsel for the defendant, counsel for the government, those are your signatures as well?

MR. SIEGLE: Correct.

MR. BERMAN: Yes, your Honor.

THE COURT: Mr. Fairley, did you have the opportunity to fully discuss the meaning of this document with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: In summary, the document says that

Proceedings

you've been informed of your right to have your plea taken before a district judge; that you've been advised that you may consent or agree to have your plea taken before a magistrate judge, in this case me; that you understand that you will not suffer any prejudice if you refuse to so consent; and that you understand that if you don't consent the assigned district judge will conduct the plea allocution.

It also says that you discussed this matter fully with your attorney and that after doing so you agree to enter your plea before a magistrate judge, in this case me.

Do you understand that document?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you wish to give up your right to have Judge DeArcy Hall hear your plea and instead proceed before me?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you make this decision voluntarily and of your own free will?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anyone threatened you or have any promises been made to you to induce you to plead before me?

THE DEFENDANT: No, your Honor.

Proceedings

THE COURT:  All right.  So I find that the defendant has knowingly and voluntarily consenting to plead before a magistrate judge and I'll sign this order and we'll get this docketed.

So before accepting your plea, Mr. Fairley, there are a number of questions that I must ask you about yourself and your state of mind to assure me that the plea is valid.  If you do not understand any of my questions, please say so and I will rephrase them.

And I've been handed what's been marked as Court's Exhibit 1.  Is your name and signature correct as stated in Court's Exhibit 1?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did you indicated, as noted in this document, that you understand all the terms of Court's Exhibit 1, that you're entering into Court's Exhibit 1 knowingly and voluntarily, and that you've read Court's Exhibit 1 in its entirety and discussed it with your attorney?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  And what is your full name, sir?

THE DEFENDANT:  Marves Rafeal Fairley.

THE COURT:  And can you spell your middle name?

THE DEFENDANT:  Rafeal, R-A-F-E-A-L.

Proceedings

THE COURT: Okay. And as noted in the pleadings here, are you also known as Vez, Vezino, or Vezino Locks?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. How old are you, sir?

THE DEFENDANT: 40.

THE COURT: I'm sorry?

THE DEFENDANT: 40 years old.

THE COURT: Okay. And what schooling or education have you had?

THE DEFENDANT: I have my Bachelors Degree.

THE COURT: From where?

THE DEFENDANT: California State University.

THE COURT: I'm sorry, can you pull that microphone a little bit closer to you? The other microphone, the large one. Thank you.

MR. SIEGLE: California State.

THE COURT: California State. Okay. Have you had any problems communicating with your attorney?

THE DEFENDANT: No, sir.

THE COURT: Thank you. Are you currently or have you recently been under the care of a doctor or a psychiatrist for any reason?

THE DEFENDANT: No, your Honor.

THE COURT: Have you ever been treated or

hospitalized for any mental illness or other mental or emotional problems?

THE DEFENDANT: No, your Honor.

THE COURT: Have you ever been treated or hospitalized for any type of addiction including drugs, prescription medicine, or alcohol addiction?

THE DEFENDANT: No, your Honor.

THE COURT: Have you taken any drugs, medicine, or pills, or had any other alcoholic beverages in the last two days?

THE DEFENDANT: No, your Honor.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand what's happening here today?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let me ask defense counsel have you discussed the cases docketed as 25-cr-323 and 26-cr-110 and the matter of pleading guilty with your client?

MR. SIEGLE: Yes, sir.

THE COURT: Does he understand the rights he would be waiving by pleading guilty?

MR. SIEGLE: Yes, sir.

THE COURT: Is he capable of understanding the nature of these proceedings?

Proceedings

MR. SIEGLE: Yes.

THE COURT: Do you have any doubt as to his competence to plead at this time?

MR. SIEGLE: No.

THE COURT: Have you advised him of the maximum and minimum sentence and fine that can be imposed?

MR. SIEGLE: Yes.

THE COURT: Have you discussed with him the operation of the sentencing guidelines and how those guidelines could affect his case?

MR. SIEGLE: I have.

THE COURT: Okay. Just one moment.

(Pause)

THE COURT: Okay. Mr. Fairley, have you reviewed a copy of the indictment pending against you, that is the written charges and forfeiture allegations made against you in the cases docketed at 25-cr-323 and 26-cr-110?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed the charges and the forfeiture allegations as well as the case in general with your attorney?

THE DEFENDANT: Yes, your Honor

THE COURT: Have you had any difficulty in communicating with your attorney?

THE DEFENDANT:  No, your Honor.

THE COURT:  Do you understand that in 25-cr-323 you've been charged in Count 1 of that indictment with conspiracy to commit wire fraud?  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that in 25-cr-323 you've been charged in Count 2 of the indictment with conspiracy to commit money laundering?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that in 25-cr-323 the government has also alleged forfeiture allegations against you with respect to Counts 1 and 2 of the indictment?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And is that accurate from the government in terms of what's being charged in 25-cr-323?

MR. BERMAN:  Yes, your Honor.

THE COURT:  Okay.  Mr. Fairley, do you understand that in 26-cr-110 in Count 1 of the indictment you've been charged with bribery in sporting contests?  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You also understand that in 26-cr-110 in Count 2 of the indictment you've been charged with conspiracy to commit wire fraud?  Do you understand that?

Proceedings

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you understand that in 26-cr-110 in Count 3 of the indictment you've been charged with wire fraud?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you understand that in 26-cr-110 in Count 4 of the indictment you've been charged with wire fraud again?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And you've also been charged in Count 5 of the indictment in 26-cr-110 with wire fraud.

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  I'll ask the government is that accurate in terms of what he's being charged with?

MR. BERMAN:  Correct, your Honor.

THE COURT:  Okay.  And I understand that today you're seeking to plead guilty to Counts 1 and 2 of the indictment in 25-cr-323 and to plead guilty to all five counts in 26-cr-110 along with the allegations related to forfeiture.  Is that right?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  So to convict you of these offenses, the government would have to prove a few items

Proceedings

beyond a reasonable doubt. Okay?

With respect to the conspiracy to commit wire fraud, the elements of conspiracy to commit wire fraud in violation of 18 USC Section 1349 are as follows.

Two or more people formed an unlawful agreement to commit the crime of wire fraud in violation of 18 USC Section 1343 and the defendant knowingly and intentionally joined the conspiracy.

The elements of wire fraud in violation of 18 USC 1343 are as follows.

There was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations, or promises.

The defendant knowingly and willfully participated in the scheme or artifice to defraud with knowledge of its fraudulent nature and with specific intent to defraud.

And in the execution of that scheme, the defendant used or caused the use of interstate wires.

With respect to the conspiracy to commit money laundering, the elements of the offense of money laundering conspiracy, violation of 18 USC 1956(h) are as follows.

First, there was an agreement between two or more persons to violate the federal money laundering

Proceedings

statute.

And second, that the defendant knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy.

The elements of substantive money laundering in violation of 18 USC Section 1956(a)(1)(A)(i) which were the objects of the conspiracy are as follows.

First, that the defendant conducted or attempted to conduct a financial transaction involving property constituting the proceeds of specified unlawful activity.

Second, that the defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity.

And third, that the defendant acted with the intent to promote the carrying on of the specified unlawful activity.

The elements of substantive money laundering in violation of 18 USC Section 1956(a)(1)(B)(i) which was the object of the conspiracy are as follows.

First, the defendant conducted a financial transaction involving property constituting the proceeds of specified unlawful activity.

Second, the defendant knew that the property

involved in the financial transaction was the proceeds of some form of unlawful activity.

And third, that the defendants knew that the transaction was designed in whole or in part either to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

The elements of substantive money laundering in violation of USC Section 1957 which is the object of the conspiracy are as follows.

First, that the defendant engaged or attempted to engage in a monetary transaction in or affecting interstate commerce.

Second, that the monetary transaction involved criminally derived property, a value greater than $10,000.

Third, that the property was derived from specified unlawful activity.

Fourth, that the defendant acted knowingly, that is with the knowledge that the transaction involved proceeds of a criminal offense.

And fifth, that the transaction took place in the United States.

And then with respect to the conspiracy to influence sporting contests by bribery, the elements of

Proceedings

conspiracy to influence sporting contests by bribery in violation of 18 USC Section 224 are as follows.

Two or more people formed an unlawful agreement to commit the crime of influencing sporting contests by bribery in violation of 18 USC Section 224, and the defendant knowingly and intentionally joined the conspiracy.

The elements of wire fraud in violation of 18 USC 224 are as follows.

First, the defendant carried into effect a scheme in interstate commerce.

Second, the scheme at issue was intended to influence in any way any sporting contest by bribery.

And third, the defendant had knowledge that the purpose of the scheme at issue was influence by bribery the sporting contest.

So let me first ask counsel for the government and the defendant have I misstated or omitted any of the essential elements of the offenses?

MR. BERMAN: No, your Honor.

MR. SIEGLE: None, your Honor.

THE COURT: Okay. So Mr. Fairley, have you had sufficient time to discuss with your attorney whether to plead guilty?

THE DEFENDANT: Yes, your Honor.

Proceedings

THE COURT: Are you fully satisfied with counsel, the representation given to you, and the advice given to you in this case by your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let me ask the government, under the Crime Victims Rights Act, crime victims have the right to be reasonably heard at any public proceeding in the district court including plea hearings. Do the cases docketed at 25-cr-323 and 26-cr-110 implicate the CVRA?

MR. BERMAN: Yes, your Honor, and victim notification has been made.

THE COURT: Are there any victims present who would like to be heard?

MR. BERMAN: Not that I'm aware, your Honor.

THE COURT: Okay. Mr. Fairley, let me now explain certain rights that you have that you'll be giving up if you enter a plea of guilty. These rights are the same for the cases docketed at 25-cr-323 and 26-cr-110. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: First, you have a right to plead not guilty, or having already plead not guilty, to persist in that plea. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you continue to plead not

Proceedings

guilty, you would have the right under the constitution and the laws of the United States to a speedy and public trial by a jury.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  At trial, you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You don't have to prove that you are innocent.  If the government failed to prove you guilty beyond a reasonable doubt, the Court would have to find you not guilty.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You would have the right to be represented by counsel at trial and at every other stage of the proceedings and if necessary, to have the Court appoint counsel.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  If you're unable to afford an attorney in the future, the Court would appoint one to you to represent you free of charge.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You would have the right at trial to see and hear all witnesses and to have witnesses cross-examined.  Do you understand?

Proceedings

THE DEFENDANT: Yes, your Honor.

THE COURT: You have the right to compel the attendance of witnesses at trial. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: You would have the right to testify and to present evidence. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: You also have the right not to testify unless you voluntarily elected to do so. You cannot be forced to testify. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Should you decide not to testify or put on any evidence at trial, these facts could not be used against you. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty to the crimes charged and if your guilty pleas are accepted based on my recommendation, you'll be giving up your right to a trial and all of the other rights I've just discussed except the right to counsel. There will be no trial in this case. You'll stand convicted of the crime to which you're pleading guilty just as if the Court found you guilty. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Judge DeArcy Hall will simply enter

Proceedings

a judgment of guilty on the basis of your guilty plea. Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You will have no right of appeal from the judgment of guilty.  There will be no appeal on the question of whether you did or did not commit the crimes.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  If you plead guilty, again, I have to ask you certain questions about what you did in order to satisfy both me and Judge DeArcy Hall that you are guilty of the charges to which you're pleading guilty. You'll have to answer my questions and acknowledge your guilt.  That'll mean you'll be giving up your right not to incriminate yourself.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand each and every one of the rights I've explained to you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you willing to give up your right to a trial and all the other rights I've just discussed with you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  Have you had an opportunity to review Court's Exhibit 1, Mr. Fairley?

Proceedings

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed this document with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anyone made any promise or assurance to you that is not in Court's Exhibit 1 in order to persuade you to accept Court's Exhibit 1?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone threatened you in any way to persuade you to accept Court's Exhibit 1?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone forced you to accept Court's Exhibit 1?

THE DEFENDANT: No, your Honor.

THE COURT: Okay. I think I mentioned this earlier but, Mr. Fairley, again this is your signature at the bottom of Court's Exhibit 1?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Siegle, this is your signature as well?

MR. SIEGLE: Yes, sir.

THE COURT: And can the government just identify whose signature is on page 16?

MR. BERMAN: It's myself, Assistant United States Attorney David Berman as well as supervisory

Proceedings

Assistant United States Attorney Jonathan Lax.

THE COURT: And also the attorney Jerome Maiatico?

MR. BERMAN: Correct, your Honor. There are also signatures there from the Eastern District of Pennsylvania I believe. Yes, you're correct it is --

MR. SIEGLE: It's Louis.

MR. BERMAN: Oh, I'm sorry, it's Louis -- no, it's Jerome. That's Jerome Maiatico's signature on the document.

THE COURT: Okay. That's Jerome Maiatico, M-A-I-A-T-I-C-O, who's an Assistant U.S. Attorney in the Eastern District of Pennsylvania. Is that right?

MR. BERMAN: Correct, your Honor.

THE COURT: Okay. Mr. Fairley, by signing Court's Exhibit 1 do you agree to all the terms of what's in Court's Exhibit 1?

THE DEFENDANT: Yes, your Honor.

THE COURT: Does Court's Exhibit 1 accurately represent your entire understanding of your agreement with the government concerning your plea of guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: And defense counsel, have you discussed Court's Exhibit 1 with your client?

MR. SIEGLE: Extensively.

THE COURT: Do you believe he fully understands it?

MR. SIEGLE: Yes.

THE COURT: Does Court's Exhibit 1 contain all the promises made between the government and your client in exchange for his plea of guilty?

MR. SIEGLE: Yes.

THE COURT: Okay. Let me ask the government does Court's Exhibit 1 contain all the promises made between the government and the defendant in exchange for his plea of guilty?

MR. BERMAN: Yes, your Honor.

THE COURT: Okay. So I'd like to review, Mr. Fairley, with you the consequences of pleading guilty. And these are coming from Court's Exhibit 1 so you can follow along there if you'd like.

First, with respect to Count 1, the conspiracy to commit wire fraud, the maximum term of imprisonment is 20 years, the minimum term of imprisonment is zero years.

The maximum supervised release term is three years to follow any term of imprisonment. If a condition of release is violated, the defendant may be sentenced up to two years without credit for prerelease imprisonment or time previously served on post release supervision.

Next, the maximum fine is the greater of

$250,000 or twice the gross gain or twice the gross loss.

Restitution is mandatory, the amount to be determined by the Court at sentencing.

There's a $100 special assessment.

And there's criminal forfeiture as set forth at paragraphs 8 through 14 of Court's Exhibit 1.

With respect to Count 2, the conspiracy to commit money laundering, that has a maximum term of imprisonment of 20 years, a minimum term of imprisonment of zero years.

A maximum supervised release term of three years to follow any term of imprisonment. If a condition of release is violated, the defendant may be sentenced up to two years without credit for prerelease imprisonment or time previously served on post release supervision.

There's also a maximum fine that is $500,000, twice the value of the property involved in the transaction, or twice the gross gain or loss, whichever is greater.

There's restitution in the full amount of each victim's loss as determined by the Court at sentencing.

$100 special assessment and criminal forfeiture as set forth in paragraphs 8 through 14.

And as noted in Court's Exhibit 1, the sentence imposed on each count of the EDNY indictment, that's the

25-cr-323 indictment, may run consecutively.

Now, with respect to the Eastern District of Pennsylvania indictment, which I've referred to here throughout as 26-cr-110, and as referred to in Court's Exhibit 1 as the indictment filed *United States v. Smith*, 26-cr-23 from the Eastern District of Pennsylvania, for Count 1 bribery in sporting contests, the maximum term of imprisonment is five years, the minimum term of imprisonment is zero years.

The maximum supervised release term is three years to follow any term of imprisonment. If a condition of release is violated, the defendant may be sentenced up to two years without credit for prerelease imprisonment or time previously served on post release supervision.

There is a maximum fine that is the greater of $250,000 or twice the gross gain or twice the gross loss. There's restitution that's mandatory in an amount to be determined by the Court at sentencing.

$100 special assessment. And there's criminal forfeiture as set forth in paragraph 8 through 14.

With respect to Count 2 of 26-cr-110, conspiracy to commit wire fraud, there's a maximum term of imprisonment of 20 years, a minimum term of imprisonment of zero years.

There's a maximum supervised release term of

three years to follow any term of imprisonment. If a condition of release is violated, the defendant may be sentenced up to two years without credit for prerelease imprisonment or time previously served on post release supervision.

There's a maximum fine that is the greater of $250,000 or twice the gross gain or twice the gross loss. There's restitution that's mandatory in an amount to be determined by the Court at sentencing.

There's a $100 special assessment. And there's criminal forfeiture as set forth in paragraph 8 through 14.

For Counts 3 through 5, which is wire fraud, there's a maximum term of imprisonment of 20 years, the minimum term of imprisonment is zero years.

There's a maximum supervised release term of three years to follow any term of imprisonment. If a condition of release is violated, the defendant may be sentenced up to two years without credit for prerelease imprisonment or time previously served on post release supervision.

There's a maximum fine that is the greater of $250,000 or twice the gross gain or twice the gross loss. There's restitution that's mandatory in an amount to be determined by the Court at sentencing.

There's a $100 special assessment.  And there's criminal forfeiture as set forth in paragraph 8 through 14.

And as noted in Court's Exhibit 1, the sentence imposed on each count of the Eastern District of Pennsylvania indictment, that is the 26-cr-110 case here, may run consecutively.  And the sentences imposed by the Court as set forth in Court's Exhibit 1 on the EDNY indictment in the EDPA, the Eastern District of Pennsylvania indictment, may also run consecutively with each other.

Do you understand the penalties for pleading guilty, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now let me ask counsel have I misstated any of the penalties for pleading guilty?

MR. SIEGLE:  No.

MR. BERMAN:  No, your Honor.

THE COURT:  Okay.  And let me ask both sides actually, there does not appear to be any immigration related issues here.  The defendant is a U.S. born citizen.  Is that right?

MR. SIEGLE:  Correct.

MR. BERMAN:  Correct, Judge.

THE COURT:  I also note, Mr. Fairley, that if

you are pleading guilty here, you'll be pleading guilty to a felony offense. That means that if the district judge accepts your plea, you'll be considered guilty of that felony offense. A felony conviction means that you may not possess a firearm, ammunition, or destructive device. That means that if you ever possess a firearm, ammunition, or destructive device, you could be prosecuted in the future for being a felon in possession. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: In addition, having a felony conviction means that you may not have other civil rights such as the right to vote, hold public office, or to serve on a jury. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Also, as set forth in Court's Exhibit 1, the defendant acknowledges that, and this is in paragraph 8 of Court's Exhibit 1, the defendant acknowledges that he obtained and/or acquired property that is subject to forfeiture as a result of his violation of 18 USC Sections 224, 1343, 1349, and 1956(h) as alleged in the indictments and including his participation in the purported fraud.

The defendant has noted in Court's Exhibit 1 consent to the entry of a forfeiture money judgment in

the amount of $676,000.  Excuse me, $676,700.00 as the forfeiture money judgment.  Okay?  So again, to be clear on the record, that's $676,700.00 as reflected in Court's Exhibit 1.

And the defendant agrees that that amount of the forfeiture money judgment as reflected in Court's Exhibit 1 and any payments towards the forfeiture money judgment represent any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of the defendant's violation of 18 USC Sections 224, 1343, and 1349, any property real or personal involved in the defendant's violation of 18 USC Section 1956(h), or any property traceable to any such property and/or a substitute asset and thus are forfeitable to the United States pursuant to 18 USC Sections 981(a)(1)(C), 982(a)(1), and 982(b)(1), 21 USC Section 853(p), and 28 USC Section 2461(c), and any administrative and/or judicial civil or criminal proceeding at the government's exclusive discretion.

And the defendant further consents the entry of an order of forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure imposing the forfeiture money judgment.

Court's Exhibit 1 also goes through in paragraphs 9 through 14 the other terms associated with

Proceedings

paying the $676,700.00.  Okay?

Do you understand all that, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Let me ask the government have I misstated or omitted the penalties or consequences for pleading guilty?

MR. BERMAN:  No, your Honor.

THE COURT:  Any issues on the defense side?

MR. SIEGLE:  None.

THE COURT:  Okay.  Again, Mr. Fairley, do you understand all the consequences of pleading guilty which I've just described?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  As I mentioned, if you plead guilty, the district judge here, Judge DeArcy Hall, will sentence you.  I want to briefly review with you how she will determine your sentence.

The Court will undergo an analysis to determine what a reasonable sentence is in your case.  As a first step, the Court must consider the advisory sentencing guidelines that are issued by the United States Sentencing Commission.  Those guidelines are just what they say, they're a guide to help the Court decide how to sentence you.  The guidelines are not mandatory but the Court is required to consider them.  Do you understand

Proceedings

that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Have you discussed the sentencing guidelines with your lawyer and how those guidelines are calculated?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  As a second step, Judge DeArcy Hall will also consider guideline factors that may allow her to sentence you above or below the applicable sentencing guidelines range, what's known as departing upward or departing downward from the range.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Finally, the Court must consider several factors set forth in the sentencing statute against all the facts and circumstances of the case to determine whether to impose a sentence within or outside the guidelines range.  Some of the factors include the nature and circumstances of the crimes committed, your characteristics and history, the kinds of sentences available, and deterring you or others from committing crimes.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  The bottom line is that until your sentencing hearing, you cannot know with any certainty what the guidelines range will be, whether there will be

Proceedings

grounds to depart upwardly or downwardly or whether the Court will impose a sentence outside of the guidelines. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Prior to your sentencing hearing, Judge DeArcy Hall will receive a pre-sentence report from the Probation Department which will recommend a guidelines range. Probation will want to interview you and you can have your attorney present for any interview. Probation will also talk to the prosecutors, to law enforcement agents involved in the case, and possibly others. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Your counsel will have the opportunity to read the pre-sentence report, challenge the facts in it as reported by the Probation Department. The government may also challenge information stated in the report. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Nevertheless, it's important for you to know what the possible guideline sentences are based upon the facts available at this point in time. Now, Keep in mind this is a guess that could go wrong. Even if your actual guidelines range is different from the estimate, you will not be allowed to withdraw your

Proceedings

plea of guilty. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: So has the government estimated what the guidelines range will likely be in this case?

MR. BERMAN: Yes, your Honor.

THE COURT: And what is it?

MR. BERMAN: The government anticipates a combined total offense level of 28 and assuming criminal history category III, the guidelines range for the defendant would be 97 to 121 months.

If the Court would like me to explain the basis for the total offense level, I can go into more detail.

THE COURT: If you can, yes.

MR. BERMAN: Okay. So for Count 1 of the EDNY indictment, there's a base offense level of 7 under guidelines section 2B1.1(a)(1), plus 16 points under 2B1.1(b)(1)(I) for intended loss amount greater than 1.5 million, plus 4 for being an organizer or leader under 3B1.1(a), minus 3 for acceptance. So that's a total of 24.

For Count 2, there's a base offense level of 27 under 2X1.1 and 2S1.1(a), plus a 1956 conviction is plus two points pursuant to 2S1.1(b)(2), and then minus 3 for acceptance points under 3E1.1, and for a total of 26.

For the EDPA indictment, there's a base offense

level of 8 for Count 1 under 2B4.1(a), bribes amount greater than 3.5 million plus 18 under Section 2B4.1(b)(1) and 2B1.1(b)(1)(J), organizer or leader, plus 4 under 3B1.1(a). Acceptance, there's a minus 3, for a total of 27.

And for Count 2 for the EDPA indictment, the wire fraud conspiracy, there's a base offense level of 7, 2B1.1(a)(1) plus 18 for intended loss amount greater than $3.5 million under 2B1.1(b)(1)(J), plus 2 for ten or more victims under 2B1.1(b)(2)(A)(i), organizer or leader plus 4 under 3B1.1(a), and then minus 3 for acceptance, and that's a total of 28, total offense level of 28.

And for Counts 3 through 5, it's the same total offense level of 28 using the same enhancements.

For the other conduct that the defendant has stipulated to in his plea agreement, the total offense level is 17. And under a grouping analysis, your Honor, the highest offense level, as I mentioned, is 28 and under the grouping analysis it remains a 26. And again, assuming a criminal history category of III, the range is projected to be 97 to 121 months imprisonment.

THE COURT: All right. Thank you. Does the defense agree with that or does the defense have a different estimate?

MR. SIEGLE: We don't take issue with the

government's stand.

THE COURT: Okay. And Mr. Fairley, just to emphasize, these remain estimates and these estimates could be wrong. Judge DeArcy Hall will not be able to determine the advisory guidelines range for your case until after the pre-sentence report has been prepared and you, your counsel, and the government have an opportunity to read it, challenge the reported facts, and the application of the guidelines.

If the advisory guidelines range in the pre-sentence report is different than the guidelines range that have just been discussed or that you expect, you cannot take your plea back. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Again, in determining your sentence, Judge DeArcy Hall is obligated to calculate the applicable advisory sentencing guidelines range and consider that range. She's obligated to consider those upward or downward departures, she's obligated to consider other sentencing factors I described in 18 USC 3553(a). And as I said, there's no guarantee as to a particular guidelines range or sentence. Do you understand all of that, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Judge DeArcy Hall's consideration

Proceedings

of everything that she is obligated to consider could result in a sentence that is either greater or lesser than the advisory guideline sentence.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And again, as you sit here today, there's no way of knowing what your ultimate sentence will be.

If the ultimate sentence that she imposes, Judge DeArcy Hall, is different from what you hoped for or expect, you cannot take your plea back.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And you should also understand that there is no parole in the federal system and that if you're sentenced to prison, you will not be released on parole.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Further, as set for in paragraph 5 of Court's Exhibit 1, the defendant agrees not to file an appeal or otherwise challenge by petition pursuant to 28 USC Section 2255, or any other provision, the conviction, the incarceratory portion of the sentence in the event that the Court imposes a term of imprisonment of 135 months or below, the duration of supervised release if it is less than or equal to the statutory maximum, or any

Proceedings

condition of supervised release about which the defendant has notice prior to sentencing and an opportunity to object. And this waiver is binding without regard to the sentencing analysis used by the Court.

The defendant further waives the right to raise on appeal or on collateral review any argument that (A), the statutes to which the defendant is pleading guilty are unconstitutional; and (B), the admitted conduct does not fall within the scope of the statute.

And nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum. Do you understand that, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: And again, is this waiver voluntary?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anyone forced you or threatened you to waive your right to an appeal?

THE DEFENDANT: No, your Honor.

THE COURT: Does counsel for the government wish me to address any items with respect to paragraph 4 of Court's Exhibit 1 or is that something you'd like to address during the allocution?

Proceedings

MR. BERMAN: Your Honor, I don't think it's necessary either here or during the allocution for that to be addressed given that the allocution does pertain to what defendant's cleaning guilty to in terms of what he's been charged with.

THE COURT: Well, let me just be clear that there are stipulations and admissions in the Court Exhibit 1. I'm happy to raise them later. But do you want me to go over them first now or just wait until later?

MR. BERMAN: It's my understanding from counsel that the defendant has read this agreement thoroughly and understands what is in it and reading of that paragraph is not necessary at this time.

MR. SIEGLE: I would join in that statement.

THE COURT: Okay. And just to be clear, Mr. Fairley, you have read and understand everything set forth in paragraph 4 of course Exhibit 1?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have any questions or any issues related to paragraph 4 in Court's Exhibit 1?

THE DEFENDANT: No, your Honor.

THE COURT: Okay. Is there anything else in the written agreement that I need to review with the defendant?

Proceedings

MR. BERMAN:  No, your Honor.

MR. SIEGLE:  And I don't believe so either, your Honor.

THE COURT:  Okay.  Mr. Fairley, do you have any questions about anything we've discussed here today?

THE DEFENDANT:  No, sir, your Honor.

THE COURT:  All right.  Do you need any time to discuss anything with your attorney?

THE DEFENDANT:  No, your Honor.

THE COURT:  Defense counsel, do you know of any reason why Mr. Fairley should not plead guilty?

MR. SIEGLE:  No.

THE COURT:  Are you aware of any viable legal defenses to the charges?

THE DEFENDANT:  No.

THE COURT:  Okay.  Mr. Fairley, are you ready to plead at this time?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  I'm going to go through these count by count with the docket numbers as well just so that the record is as clear as possible.  Okay?

Mr. Fairly, what is your plea to Count 1 of the indictment in 25-cr-323; guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  What is your plea to Count 2 of the

Proceedings

indictment in 25-cr-323; guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  What is your plea to Count 1 of the indictment in 26-cr-110; guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  What is your plea to Count 2 of the indictment in 26-cr-110; guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  What is your plea to Count 3 of the indictment in 26-cr-110; guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  What is your plea to Count 4 of the indictment in 26-cr-110; guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  What is your plea to Count 5 of the indictment in 26-cr-110; guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  First, did I capture all of the counts in which the defendant was expected to plead guilty?

MR. BERMAN:  Yes, your Honor.

MR. SIEGLE:  Yes, sir.

THE COURT:  Okay.  Mr. Fairley, are you pleading guilty to these counts voluntarily and of your own free will?

Proceedings

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Has anyone threatened or forced you to plead guilty?

THE DEFENDANT:  No, your Honor.

THE COURT:  Other than the promises in your Court's Exhibit 1, has anyone promised you anything to make you plead guilty?

THE DEFENDANT:  No, your Honor.

THE COURT:  Has anyone made any promise to you as to what your sentence will be?

THE DEFENDANT:  No, your Honor.

THE COURT:  Are you pleading guilty because you are in fact guilty?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  So then please tell me in your own words what you did in order to make you guilty of the counts in the indictment in 25-cr-323 and guilty of Counts 1 through 5 of the indictment in 26-cr-110. Again, to be clear, this is with respect to Counts 1 and 2 of the indictment in 25-cr-323 and Counts 1 through 5 of the indictment in 26-cr-110.

THE DEFENDANT:  As to the indictment relating to the NBA games in the Eastern District of New York --

THE COURT:  And sir, I appreciate that I speak very fast, but if you could also speak very slowly and

loudly just so that it's captured.

THE DEFENDANT: As to the indictment relating to the NBA games in the Eastern District of New York, from December 2022 to March 2024, I agreed and was working with other people and obtained non-public information about NBA professional basketball players' game performance in future games so myself and others could place bets through various sports betting apps and licensed sports books which gave me and the people I provided information to an advantage in placing proposition bets which wager on information to an advantage in placing proposition bets, which wager on --

THE COURT: Hang on a second. Can you repeat that last sentence? And just if you could go as slow as possible.

THE DEFENDANT: Which wager on a player's performance, or affected the score or outcome in a particular game. This gave me and the people I provided information to a better chance of winning.

I paid people for information by splitting winnings, having bets placed on their behalf so they could profit, or giving the people placing the bet permission to use the inside information so they too could make money.

I also placed bets, or had others to do that

Proceedings

for me on behalf of players or on behalf of the source of the inside player information so they also could make money from the information.

I agreed to pay a player to change their game performance to give me an advantage on bets I was having placed for me --

THE COURT: I'm sorry, I'm sorry to interrupt, but just can you repeat that last sentence?

THE DEFENDANT: Yes. I agreed to pay a player to change their game performance to give me an advantage on bets I was having placed for me and for others.

I shared this non-public information with others, who I believe also made bets, so the player could be paid. I had people place bets on my behalf and provided them with the money to do so and paid them or gave them a benefit for doing this for me.

THE COURT: And I'm sorry to interrupt. I just want to make sure the record's clear. Was it a player or players?

THE DEFENDANT: A player.

THE COURT: Okay. Continue.

THE DEFENDANT: This was done in violation of betting sites or apps and licensed sports books' terms of service. I received and sent money from time to time through wire transfers. I paid money for inside

Proceedings

information that was earned or obtained from winnings using non-public information to individuals for the information they gave me so that they would continue providing me with the information in the future so I could continue to place advantage bets.

I made and received payments while at home in Mississippi, delivered cash payments to people in other places like Philadelphia, Pennsylvania, and received money from people that was made using the information I provided to them.

I also wired and handed money to people secretly in sums in excess of 10,000. This was done to hide where the money came from, where or to whom the money was going, and try to hide how the money was made.

The purpose of the agreements I had with people involved in this indictment and others involved in this gambling was to make money from the Sports Book by winning the bets placed using non-public inside information we had. I know that these bets would not have been taken by licensed betting companies if they had the information that I possessed. Some of the people that received the non-public information I shared were in the Eastern District of New York.

THE COURT: You did what in the Eastern District of New York?

Proceedings

THE DEFENDANT:  Some of the people that received the non-public information I shared were in the Eastern District of New York.

THE COURT:  Okay.  Shared?  Okay.  Sorry.  Go ahead.

THE DEFENDANT:  With regard to the indictment from Pennsylvania involving NCAA and Chinese Professional Basketball Leagues, from September 2022 through February 2025, in Philadelphia, Pennsylvania; Mississippi, where I live; and elsewhere, I agreed and worked with other people, including people named in the indictment, to pay and did pay NCAA college basketball players and professional basketball players within the Chinese Professional League to change their performances in games so that myself and others could place favorable bets on the games they played in.

I placed bets on numerous Chinese Professional Basketball League and NCAA basketball games in which I had paid players involved in those games to change their performance so myself and others was working with could win bets that I placed or had others place for me --

THE COURT:  I'm sorry, working with what?

THE DEFENDANT:  Working -- so myself and others that I was working with could win bets --

THE COURT:  Okay.  Sorry.

THE DEFENDANT: -- that I placed or had other place for me using betting apps on their phones, or called and texted people to instruct them to place bets for me, others and themselves, in licensed sports books all over the United States.

Myself and others won money due to altered player performance. I entered into these agreements to pay players to change their performance so myself and others could win bets knowing that it was illegal to do this.

On March 5, 2023, I had another person place bets at the BetRivers Sportsbook at River Casino --

THE COURT: Can you spell that?

THE DEFENDANT: B-E-T-R-I-V-E-R-S, BetRivers Sportsbook at Rivers Casino located in Philadelphia, Pennsylvania, on the outcome of a Chinese Professional League basketball game in which I had agreed to pay money to a professional Chinese league basketball player to change his performance so myself and others could win our bets. This occurred again at the same casino in Philadelphia, Pennsylvania on March 14, 2023.

On or around February 21, 2024, based on information I received from others that players on the LaSalle University team were going to intentionally play poorly, I informed others through a text app on my phone

to place a bet that Saint Bonaventure University team would cover the first half-point, the spread in the game against LaSalle at the FanDuel Sports Book at Live Casino in Philadelphia, Pennsylvania on my behalf and for the benefit of others.

THE COURT: Just to clarify, for the record, I have some other questions, but can you please repeat what you said about LaSalle? Was the bet involving a player with LaSalle or multiple players with LaSalle and against Saint Bonaventure? Or was Saint. Bonaventure involved?

THE DEFENDANT: I have to start over. On or around February 21, 2024, based on information I received from other players on the LaSalle University team were going to intentionally play poorly, I informed others through a text app on my phone to place a bet that Saint Bonaventure University team would cover the first half-point spread in the game against LaSalle at the FanDuel Sports Book at Live Casino in Philadelphia, Pennsylvania.

THE COURT: Okay. So in other words, not involving directly Saint Bonaventure. They were just playing Saint Bonaventure.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Anything further that you're reading from?

THE DEFENDANT: No, sir.

Proceedings

THE COURT:  Okay.  So first, you were reading from a statement.  Did you work on that statement with your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you agree with everything that is expressed in those two statements?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  And just to be clear, when you said the NBA, that's the National Basketball Association?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And the NCAA is the National Collegiate Athletic Association?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I think you said the CBA.  That's the Chinese Basketball Association?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  And in terms of the transactions, where they occurred, the transactions that you made were in the United States?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And just going back for a moment, with respect to the conspiracy to commit wire fraud and the wire fraud, did you knowingly and intentionally join that conspiracy?

Proceedings

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Did you use or cause the use of intrastate wireless?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Went respect to the conspiracy to commit money laundering, did you knowingly again engage in the conspiracy with the specific intent to commit the offenses, that is the objects of the conspiracy?

THE DEFENDANT: Yes, your Honor.

THE COURT: And was that conspiracy involving two or more persons?

THE DEFENDANT: Yes, your Honor.

THE COURT: To violate the federal money laundering statute?

THE DEFENDANT: Yes, your Honor.

THE COURT: With respect to the conspiracy to influence sporting contests by bribery, did you knowingly and intentionally join that conspiracy?

THE DEFENDANT: Yes, your Honor.

THE COURT: And were there two or more people who formed an unlawful agreement to commit the crime of influencing the sporting contests by bribery?

THE DEFENDANT: Yes, your Honor.

THE COURT: And again, with respect to that

Proceedings

conspiracy, did you use interstate wires?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And, excuse me, to carry out a scheme in interstate commerce?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  And that scheme was intended to influence the NBA game that you mentioned?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And again, to be clear, I'm not sure if you stated this, was it a single NBA game or multiple NBA games?  And if you want to talk to counsel for a moment as well.  I just want to make sure that it's clear on the record.

MR. BERMAN:  And your Honor, I just want to put on the record the speaking indictment which is public alleges the defendant's involvement with respect to multiple NBA games.

MR. SIEGLE:  That's correct, your Honor.  It was multiple NBA games and different scenarios for different NBA games.

THE COURT:  And was it the same player --

THE DEFENDANT:  No.

THE COURT:  -- or was it multiple players?  If you guys need a moment to discuss it.  I just want to make sure the record's clear.  I know I asked you earlier

was it a single player or player or players, but was this a single player or multiple players?

MR. BERMAN: Your Honor, if I just might to clarify on the record? So there are multiple iterations of the scheme alleged in the EDNY indictment. One of the games at issue was a March 23, 2023 game involving the defendant's co-defendant Terry Rozier who was a then NBA player. It might be helpful for your Honor just to confirm with Mr. Fairley that with that reference he was referring to Mr. Rozier as well as to also note that the conduct that Mr. Fairley has allocuted to is not an exhaustive list. It's just generally speaking for purposes of his allocution today and not every single fact.

THE COURT: Okay. Any response?

MR. SIEGLE: That's fair. That's correct.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And does the government want me to ask any further questions about Mr. Rozier?

MR. BERMAN: No. No, your Honor. I just wanted to clarify for the record those two points that Mr. Fairley was referring to Mr. Rozier as well as that, you know, this is not an exhaustive list of everything that Mr. Fairley did. It's generally just his participation in the charged conspiracy.

Proceedings

THE COURT:  Okay.  And is that accurate from the defendant?

THE DEFENDANT:  Yes.  Yes, your Honor.

THE COURT:  Okay.  So let me ask the government first is there anything else that you'd like me to address with respect to the allocution?

MR. BERMAN:  No, your Honor.  I believe that was sufficient.

THE COURT:  Okay.  And again, in an abundance of caution, the government does not want to say anything further related to paragraph 4 of the agreement?

MR. BERMAN:  No, your Honor.  We don't believe that is necessary.

THE COURT:  All right.  What would the government's proof here have been in sum at trial should these matters have proceeded to trial?

MR. BERMAN:  Sure, your Honor.  It would be a combination of, among other things, electronic evidence such as cell phones, iClouds, subpoena returns such as financial records, bank records, as well as testimony from fact witnesses.

THE COURT:  Okay.  So again, let me just ask the government does the allocution satisfy all the essential elements of the charges to which Mr. Fairley is pleading guilty?

Proceedings

MR. BERMAN: Yes, your Honor.

THE COURT: And does the government think I need any further allocution with respect to any of the counts to which Mr. Fairley is pleading guilty?

MR. BERMAN: No, your Honor.

THE COURT: Okay. Let me ask defense counsel do you think the allocution is factually sufficient?

MR. SIEGLE: Yes.

THE COURT: Okay. Does either counsel wish me to ask anything further with respect to the allocution?

MR. BERMAN: No, your Honor.

MR. SIEGLE: Nothing from the defense, your Honor.

THE COURT: Okay. So based on the information given to me, I'll make the following findings.

I find that the defendant is fully competent and capable of entering an informed plea.

That he's aware of the nature of the charges, the consequences of his plea.

That the pleas of guilty to Counts 1 of the indictment in 25-cr-323, Count 2 of the indictment in 25-cr-323, Count 1 of the indictment in 26-cr-110, Count 2 of the indictment in 26-cr-110, Count 3 of the indictment in 26-cr-110, Count 4 of the indictment in 26-cr-110, and Count 5 of the indictment in 26-cr-110 are knowing and

voluntary pleas and are supported by independent bases in fact containing the essential elements of the offense, of each of the offenses.

Finally, I find that there's a factual basis for the plea meaning that Mr. Fairley did what is charged in the indictments.

So I'm going to recommend that the Court accept Mr. Fairley's plea of guilty to Count 1 and Count 2 of the indictment in 25-cr-323, as well as Counts 1, 2, 3, 4, and 5 of the indictment in 26-cr-110.

Sentencing has been scheduled for February 24, 2027 at 10 a.m. in courtroom 4H North before Judge DeArcy Hall. Again, February 24, 2027 at 10 a.m. And if there's issues with that date, raise them with Judge DeArcy Hall.

Is the government requesting detention at this time?

MR. BERMAN: No, your Honor.

THE COURT: Okay. I do want to go through the conditions of release that have previously been in effect. And really, this is out of an abundance of caution particularly as there had been multiple proceedings and multiple districts.

As set forth in the operative order that was entered on November 6, 2025, which is at docket entry

Proceedings

number 40 in 25-cr-323, Mr. Fairley is going to be released on bond.  And Mr. Fairley, I want you to listen closely again to these conditions.

You're to be on bond in the amount of $200,000 which is cosigned by the sureties that were identified on the bond and that have already been allocuted.

As part of the conditions of release, Mr. Fairley, you must appear in court as required and surrender as directed for service of any sentence imposed.

You must not commit a federal, state, or local crime on release.

You must cooperate in the collection of a DNA sample if authorized by the law.

You must advise the Court in writing before making any change in residence or telephone number.

You must not possess a firearm, destructive device, or other dangerous weapon.

You must not unlawfully possess a narcotic drug or other controlled substance as defined by the law unless prescribed by a licensed medical practitioner. And marijuana is still prohibited under federal law.

You must submit to Pretrial supervision as directed.

I think the defendant has already surrendered a

Proceedings

passport.  Is that right?

THE DEFENDANT:  Yes, sir.  Yes, your Honor.

THE COURT:  You must not try to obtain another passport or international travel document.

You're limited in terms of your travel to New York City, Long Island, Mississippi, and as approved by Pretrial Services.

You're not to have any contact with any co-defendants, co-conspirators, victims, or witnesses except in the presence of counsel.

You're to engage in no gambling of any kind.

You're not to transfer assets of $20,000 or more without the Court's permission.

And to continue reporting to the Mississippi Department of Probation and Parole as directed.

Any questions on any of those conditions, sir?

THE DEFENDANT:  No, sir, your Honor.

THE COURT:  Also, if you fail to appear in court as required or if you violate any of the conditions of your release, a warrant will immediately be issued for your arrest at which point those who signed the bond will be responsible for paying the full amount, that is $200,000.  And you may be charged with a separate federal crime of bail jumping which can mean additional jail time and/or fine.

Proceedings

And if you fail to appear before any court, you may incur forfeiture of any security that was given or pledged and an additional criminal case of bail jumping could be instituted.

Additionally, if you commit a new offense while you're released, in addition to the sentence prescribed for that offense, you'll be sentenced to an additional term of imprisonment of not more than ten years if the offense is a felony, or not more than one year if the offense is a misdemeanor. This term of imprisonment will be executed after any other sentence of imprisonment is completed.

And if you obstruct the administration of justice, your offense level may be increased. If you do so by intimidating or threatening or attempting to intimidate or threaten witnesses, or court officers, or jurors, or by obstructing any investigation or tampering with any witness, or informant, or victim, or by retaliating against any witness, victim, or informant, your offense level would be increased and you could face additional criminal charges.

Do you understand the penalties for violation of any condition of your release and your failure to appear?

THE DEFENDANT: Yes, sir, your Honor.

Proceedings

THE COURT:  If at any point you have any questions about what you can or can't do, speak with your attorney.  They will be in touch with Pretrial Services as necessary.

I'm going to return Court's Exhibit 1 to the parties.  I just ask the government to send a copy to my chambers and also send a fully signed copy to the defendant for their files as well.

Okay.  Anything further at this stage?

MR. BERMAN:  No, your Honor.

MR. SIEGLE:  Nothing further from the defense, your Honor.

THE COURT:  All right.  Thanks very much then. We're adjourned.

MR. SIEGLE:  Thank you for your time.

(Matter concluded)

-oOo-

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **29th** day of **May**, 2026.

_____
Transcriptions Plus II, Inc.

# Exhibit B

F. # 2024R00288

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _X

UNITED STATES OF AMERICA

    - against -

MARVES FAIRLEY,

           Defendant.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _X

[PROPOSED]
ORDER ACCEPTING
GUILTY PLEA

Nos. 25-CR-353 (LDH) and 26-CR-110 (LDH)

       Upon a review of the transcript of the guilty plea of the defendant

MARVES FAIRLEY, offered on May 28, 2026, before the Honorable Joseph A. Marutollo,

United States Magistrate Judge, in the above-captioned cases, this Court finds that the defendant

pleaded guilty knowingly and voluntarily, and that a factual basis supports the defendant's plea.

       IT IS HEREBY ORDERED that the guilty plea of the defendant, offered on

May 28, 2026 before Judge Marutollo is accepted.


Dated: Brooklyn, New York
      _____, 2026


                     _____
                     THE HONORABLE LASHANN DEARCY HALL
                     UNITED STATES DISTRICT JUDGE
                     EASTERN DISTRICT OF NEW YORK